United States District Court
Southern District of Texas

**ENTERED**

November 23, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

GERMAN HERNANDEZ NAJERA,      )
                              )
        Plaintiff,            )
                              )
        v.                    )      1:16cv459 (JCC/JFA)
                              )
                              )
UNITED STATES OF AMERICA,     )
                              )
        Defendant.            )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on the Defendant's Motion to Sever and Dismiss or Transfer Venue to the Southern District of Texas, Motion to Dismiss for Lack of Subject Matter Jurisdiction, and Motion to Dismiss for Failure to State a Claim. [Dkt. 9.] For the following reasons, the Court will deny Defendant's motion to dismiss for lack of subject matter jurisdiction. The Court will grant the Defendant's motion to sever and transfer Plaintiff's Texas claims—related to events that took place there in June and July 2013—to the Southern District of Texas. The Court will continue Plaintiff's remaining cause of action regarding false imprisonment, as it arises from events that took place in Virginia in May and June 2014. Finally, the Court will deny as moot Defendant's motion to dismiss for failure to state a claim.

# I. Background

This case is brought by Plaintiff German Hernandez Najera ("Plaintiff" or "Hernandez Najera") and arises out of torts allegedly committed by the United States Customs and Border Protection ("CBP") and United States Immigration and Customs Enforcement ("ICE"), pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*

### A.   Factual Background

Plaintiff, a citizen of Honduras, alleges that he first entered the United States in 1998. (Compl. ¶ 21.) In or around 2000, he was granted Temporary Protected Status ("TPS"). (*Id.*) The parties agree that Plaintiff's TPS was valid at all times relevant to this case, and remains so today.

In November 2012, Plaintiff left the United States to return to Honduras to visit his mother and "the man he considered his stepfather," both of whom he alleges were ill. (*Id.* ¶ 22.) Plaintiff did not obtain advance parole for this trip. (*Id.* ¶ 23.) He returned to the United States in March 2013, entering in Texas, where he alleges he was held captive by a criminal organization for about two months. (*Id.* ¶ 24.) After he escaped, Plaintiff returned to Mexico for approximately six weeks. (*Id.* ¶ 25.) Plaintiff then reentered the United States on June 13, 2013, and was apprehended by CBP. (*Id.*) CBP transported him to the McAllen Border Patrol Station. (*Id.*)

2

Once Plaintiff arrived at the McAllen station, Plaintiff alleges that he showed CBP officials an Employment Authorization Document ("EAD") that proved he had valid TPS until July 5, 2013. (Compl. ¶ 26.) Despite this documentation, CBP officials allegedly placed him in a holding cell with other detainees. (*Id.* ¶ 28.) Plaintiff claims that the holding cell's temperature was kept "at a painfully low level" and detainees were not provided with bedding or clothing to keep warm. (*Id.* ¶ 29.) Plaintiff also alleges that CBP officials interfered with the detainees' ability to get adequate sleep; failed to provide privacy to use the bathroom; left detainees in dirty, unsanitary conditions without the opportunity to bathe or have access to hygiene products; and provided inadequate water and food. (*Id.* ¶¶ 31, 33-37.) Hernandez Najera further alleges that he was not permitted to contact his attorney during his detention. (*Id.* ¶ 38.)

Four days later, on June 17, 2013, Plaintiff was transferred to ICE custody at the South Texas Detention Center in Parsall, Texas. (Compl. ¶ 40.) He was released from the facility on July 10, 2013, under an Order of Release on Recognizance. (*Id.* ¶ 45.) The Order required him to report to ICE Enforcement and Removal Operations ("ERO") in Fairfax, Virginia on July 31, 2013. (*Id.*) Plaintiff reported as ordered and was told to return on May 8, 2014. (*Id.* ¶ 46.) On April 8,

3

2014, a hearing was held in Arlington Immigration Court; the Plaintiff did not appear. (*Id.* ¶ 47.) He alleges that he failed to receive any notice of the hearing. (*Id.*) As a result, the immigration judge ordered his removal *in absentia*. (*Id.*) On May 8, 2014, when Hernandez Najera reported to ICE ERO, he was told about the removal order and asked to come back on May 29, 2014. (*Id.* ¶ 48.) When he returned at the end of May, ICE detained him and placed a GPS electronic monitoring bracelet on his ankle. (*Id.* ¶ 49.)

Following this incident, Plaintiff secured counsel and on June 2, 2014, moved to reopen his removal proceedings and to vacate the final order of removal. (*Id.* ¶ 51.) One day later, on June 3, 2014, Plaintiff's counsel contacted ICE and asserted that the ankle bracelet was unlawful. (*Id.*) It was then removed. (*Id.* ¶ 53.) Plaintiff's motion to reopen the removal proceedings was granted. (*Id.* ¶ 51.) His removal case is still pending, with the next hearing date scheduled for March 2, 2017. (*Id.* ¶ 54.)

## B.   Administrative Proceedings

Plaintiff filed administrative claims for damages with both CBP and ICE on January 30, 2015. (Compl. ¶ 15.) On November 5, 2015, CBP denied the claims on behalf of both agencies. (*Id.* ¶ 16.)

## C.   Procedural History

4

Plaintiff filed suit in this Court on April 25, 2016. [Dkt. 1.] On September 26, 2016, Defendant filed the instant motions. [Dkt. 9.] Plaintiff filed his opposition on October 20, 2016 [Dkt. 15], to which Defendant replied on October 31, 2016 [Dkt. 18]. On November 16, 2016, the Court held oral argument. Defendant's motions are now ripe for disposition.

## II. Standards of Review

### A. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Being a court of limited jurisdiction, we must dismiss a case when subject matter jurisdiction is lacking. Parties that move to dismiss under Rule 12(b)(1) may contend that the complaint "fails to allege facts upon which subject matter jurisdiction may be based" or "that the jurisdictional allegations of the complaint [are] not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In either case, the "burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Id.*

### B. 12(b)(3) Motion to Transfer to a Proper Venue

If a case is filed in an improper venue, a party may seek dismissal and/or transfer to a proper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406. *Colonna's Shipyard, Inc. v. City of Key* West, 735 F. Supp. 2d 513, 516 (E.D. Va. 2010).

"When ruling on a 12(b)(3) motion, 'the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis,' and the court can therefore consider evidence outside the pleadings." *W. Ref. Yorktown, Inc. v. BP Corp. N. Am. Inc.*, 618 F. Supp. 2d 513, 516 (E.D. Va. 2009) (quoting *Sucampo Pharms., Inc. v. Astella Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). The plaintiff bears the burden of showing that venue is proper. *Colonna's Shipyard*, 735 F. Supp. 2d at 416.

Section 1406 governs motions to transfer venue for cases or claims originally filed in an improper venue. 28 U.S.C. § 1406(a). It provides that the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* The district court has "broad discretion" whether to grant or deny a motion to transfer. *Landers v. Dawson Constr. Plant, Ltd.*, 1999 WL 991419, at *2 (4th Cir. Nov. 2, 1999); *see also Young v. AT&T Mobility, LLC*, 2010 WL 2573982, at *2 (D. Md. June 22, 2010) (noting that the decision should be made on a case-by-case basis).

C. Motion to Sever

A court may, on motion or on its own, sever any claim against a party. Fed. R. Civ. P. 21. "[A] court has virtually unfettered discretion in determining whether or not severance is appropriate." *17th Street Assocs., LLP v. Markel Int'l Ins. Co.*

6

*Ltd.*, 373 F. Supp. 2d 584, 598 n.9 (E.D. Va. 2005) (internal citation omitted).

D.   12(b)(6) Motion to Dismiss for Failure to State a Claim

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted). While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. *Id.*  Based upon these allegations, the court must determine

7

whether the plaintiff's pleadings plausibly give rise to an entitlement for relief. *Id.* Legal conclusions couched as factual allegations are not sufficient, *Twombly*, 550 U.S. at 555, nor are "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The plaintiff, however, does not have to show a likelihood of success; rather, the complaint must merely allege-directly or indirectly-each element of a "viable legal theory." *Twombly*, 550 U.S. at 562-63.

At the motion to dismiss stage, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Iqbal*, 556 U.S. at 678. Generally, a district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). It may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). In addition, the court may consider documents attached to the defendant's motion to dismiss if those documents are central to the plaintiff's claim or are "sufficiently referred to in the complaint," so long as the plaintiff does not challenge their authenticity. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006).

### III. Analysis

A.   12(b)(1) Motion to Dismiss for Lack of Subject
     Matter Jurisdiction

Plaintiff asserts that this Court has jurisdiction
over his claims based upon 28 U.S.C. § 1331 (federal question
jurisdiction) and 28 U.S.C. § 1346(b) (FTCA jurisdiction).
(Compl. ¶ 13.)  Defendant argues that this Court has been
divested of jurisdiction over Plaintiff's claims by virtue of 8
U.S.C. § 1252(g).  (Def. Mem. in Supp. at 19 (citing 8 U.S.C. §
1252(g) ("[N]o court shall have jurisdiction to hear any cause
or claim by or on behalf of any alien arising from the decision
or action by the Attorney General to commence proceedings,
adjudicate cases, or execute removal orders against any alien
under this chapter.")).)

In *Reno v. American-Arab Discrimination Committee*
("*AADC*"), 525 U.S. 471 (1999), the Supreme Court held that 8
U.S.C. § 1252(g) divested federal courts of jurisdiction over
three discrete, discretionary Executive actions: "[c]ommenc[ing]
proceedings, adjudicating cases, [and] execut[ing] removal
orders." *Id.* at 483.  The Court emphasized that Section 1252(g)
"was directed against a particular evil: attempts to impose
judicial constraints upon prosecutorial discretion." *Id.* at 485
n.9.  The Act aimed to prevent "the deconstruction,

9

fragmentation, and . . . prolongation of removal proceedings."
*Id.* at 486.

*AADC* rejected the parties' and Court of Appeal's
"strained readings" of the statute, which rested on the
assumption that the statute covered the universe of deportation
claims, requiring no judicial review unless Section 1252(g)
explicitly provided it. *AADC*, 525 U.S. at 482. In rejecting
this argument, the Court emphasized that it was "implausible
that the mention of three discrete events along the road to
deportation was a shorthand way of referring to *all* claims
arising from deportation proceedings." *Id.* at 482 (emphasis
added). Moreover, the Court was not "aware of [any] other
instance in the United States Code in which language such as
[that used in Section 1252(g)] ha[d] been used [by Congress] to
impose a general jurisdictional limitation." *Id.* Instead,
"what § 1252(g) says is much narrower." *Id.* The statute
divests courts of jurisdiction only with respect to three
discrete actions: commencing proceedings, adjudicating cases, or
executing removal orders. *Id.* (noting that the statute does not
cover other decisions or actions, such as opening an
investigation, surveilling the suspected violator, rescheduling
the hearing, or refusing to reconsider a removal order).
Neither party appears to dispute this. Yet they disagree about
whether the statute applies to bar jurisdiction in this case.

Defendant argues that Section 1252(g) bars this Court's jurisdiction because all of Plaintiff's claims arise from the Attorney General's decision to commence removal proceedings against him. (Def. Mem. in Supp. at 19-20.) Defendant maintains that the decision to commence proceedings was initiated when the Plaintiff was served with a Notice to Appear ("NTA") on June 13, 2013, the same day he was taken into CBP custody in Texas. (*Id.* at 15.) Defendant believes that this decision triggered 8 U.S.C. § 1226(a), which authorizes the detention of an alien pending a removal decision. (*Id.* at 20.) Moreover, once the Arlington Immigration Court entered a final order of removal in April 2014, (Compl. ¶ 47), Defendant argues that another statute–8 U.S.C. § 1231–permitted the use of the ankle monitoring bracelet in Virginia. (Def. Mem. in Supp. at 20.)

Plaintiff argues that the Department of Homeland Security ("DHS") has "no discretion to detain noncitizens with TPS" because it is statutorily prohibited from doing so. (Pl. Mem. in Opp. at 15 (citing 8 U.S.C. § 1254a(d)(4) ("An alien provided temporary protected status shall not be detained by the Attorney General on the basis of the alien's immigration status."))). This is a point with which the Government now agrees, having conceded it during oral argument on November 16, 2016. The parties also agree that, throughout this time,

11

Plaintiff had valid TPS. As a result of Plaintiff's TPS, the Attorney General had no discretion to carry out its April 2014 removal order. *See* 8 U.S.C. § 1254a(a)(1)(A) (clarifying that the Attorney General cannot execute an order of removal unless the alien's TPS has been revoked). Plaintiff argues that, due to Defendant's non-discretionary decision to detain Plaintiff, first in Texas and then in Virginia, Section 1252(g) does not bar jurisdiction. Furthermore, even if the statute applied to non-discretionary decisions, CBP's choice to detain Plaintiff did not "arise from" the commencement of removal proceedings. (*Id.* at 16.) Plaintiff argues that CBP arrested and detained him on June 13, 2013, but did not commence removal proceedings until July 12, 2013, when it filed a charging document with the Arlington Immigration Court.[1] (*Id.*) In other words, CBP did not commence proceedings against Plaintiff until 29 days *after* the Defendant first took Plaintiff into custody. (*Id.*)

Defendant responds to Plaintiff's arguments by stating that it is "quite clear" that whether DHS had discretion to detain Plaintiff, given his valid TPS, is irrelevant to the Section 1252(g) analysis. (Def. Rep. at 12.) Defendant cites a host of cases, all of which are easily distinguishable from the case at hand, for the proposition that Section 1252(g) bars

---

[1] "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). Filing means the "actual receipt of a document by the appropriate Immigration Court." 8 C.F.R. § 1003.13.

Plaintiff's claims. The Court disagrees. Rather than discuss every case cited by Defendant, however, the Court will focus on explaining how this decision differs from its prior case, *Guardado v. United States*, 744 F. Supp. 2d 482 (E.D. Va. 2010).

Defendant cites *Guardado* for the proposition that Section 1252(g) bars jurisdiction over any claim that arises from the decision to commence proceedings, adjudicate cases, or execute removal orders, regardless of whether the Attorney General's decision to engage in one of those actions was discretionary. (Def. Rep. at 12.) *Guardado* established no such proposition. In *Guardado*, a Salvadorian national brought a *Bivens* claim, challenging his removal from the United States. 744 F. Supp. 2d at 483-84. Defendant is correct that the Court held that § 1252(g) was "quite clear that no court shall have jurisdiction to hear *any* cause or claim arising from the decision . . . to . . . execute removal orders." *Id.* at 487 (internal quotations omitted). However, Defendant overlooks the fact that the case arose "entirely from the Plaintiff's removal," which was executed at the Attorney General's discretion after USCIS revoked Guardado's TPS. *Id.* at 485, 488. Thus, *Guardado* provides little help to the Court today.

*Guardado* also went to great lengths to differentiate its holding from that of *Medina v. United States*, 92 F. Supp. 2d 545 (E.D. Va. 2000). In *Medina*, the Court was concerned that a

broad reading of Section 1252(g) would preclude judicial review of a claim "even where there [was] blatantly lawless and unconstitutional conduct" taking place. 92 F. Supp. 2d at 554. As a result, the Court held that the statute did not bar its jurisdiction to hear the plaintiff's FTCA claims. *Id.* Here, unlike *Guardado*, the concerns expressed in *Medina* take center stage. Plaintiff's allegations are serious and troubling, involving detention in allegedly inhumane conditions. He is not waging a collateral attack on his immigration proceedings, but rather seeking money damages for false imprisonment due to the Attorney General's decision to detain him in violation of 8 U.S.C. § 1254a(d)(4). Rather than adopting an expansive reading of Section 1252(g)'s jurisdictional bar, as Defendant urges, this Court instead follows the Supreme Court's lead in *AADC*, which emphasized the statute's narrowness. *AADC*, 525 U.S. at 482. Section 1252(g) does not bar jurisdiction of Plaintiff's claims in the instant case. Both his Texas and Virginia claims arise from the Executive's non-discretionary decisions to detain him. Thus, Section 1252(g) simply does not apply.

Even assuming, *arguendo*, that the statute does apply, Defendant's decision to detain Plaintiff in Texas cannot be fairly characterized as "arising from" a decision to commence removal proceedings. Defendant does not deny that it detained Plaintiff 29 days *before* it filed a charging document with the

14

Immigration Court.  Rather, Defendant argues that the issuance of an NTA was functionally equivalent for the purpose of commencing proceedings.  Such an assertion, however, directly contradicts federal regulations.  *See* 8 C.F.R. §§ 1003.13, 1003.14(a).  As a result, this Court finds that Section 1252(g) does not divest its ability to hear Plaintiff's Texas claims.

Plaintiff's Virginia claim is also not barred by Section 1252(g).  Defendant's decision to place an ankle monitoring bracelet on Plaintiff in Virginia in May 2014 amounts to "surveil[lance of] a suspected violator," which the Supreme Court clarified was an action not covered by Section 1252(g)'s jurisdictional bar.  *AADC*, 525 U.S. at 482.  Accordingly, the Court finds that it has subject matter jurisdiction to hear Plaintiff's Virginia claim.

Given the Supreme Court's nuanced focus on the intent and purpose of Section 1252(g), as well as its insistence that the provision is narrow and applies only to three discrete, discretionary actions, this Court now finds that Section 1252(g) does not bar its review of Plaintiff's claims.  Put another way, Plaintiff's Complaint alleges facts that, presumed true, provide a sufficient basis for subject matter jurisdiction.  The Court denies Defendant's motion to dismiss for lack of subject matter jurisdiction.

B.    Motion to Sever Plaintiff's Texas Claims and
      Transfer Venue

In an FTCA action, venue is proper only "in the
judicial district where plaintiff resides or wherein the act or
omission complained of occurred."  28 U.S.C. § 1402(b).  The
court will consider each basis for venue in turn.

To establish venue based on residency, "a natural
person, including an alien lawfully admitted for permanent
residence in the United States, shall be deemed to reside in the
judicial district in which that person is domiciled."  28 U.S.C.
§ 1391(c)(1).  Although Plaintiff alleges that he resides in
Woodbridge, Virginia, (Compl. ¶ 8.), he is a citizen of Honduras
and is, therefore, an alien for purposes of venue.

Plaintiff argues that 28 U.S.C. § 1391(c) should be
read expansively: "[t]he statute does not exclude any class of
persons from establishing residency for venue purposes."  (Pl.
Mem. in Opp. at 7.)  Plaintiff also argues that the term
"resides" must have the same meaning in both the cancellation of
removal statute, 8 U.S.C. § 1229b(a), and the venue statute, 28
U.S.C. § 1391(e).

In contrast, Defendant argues that the term "resides"
has a specific legal meaning in the context of venue, and that
28 U.S.C. § 1391(e) did not always include aliens lawfully
admitted for permanent residence.  (Def. Mem. in Supp. at 12.)

16

In fact, in 2011, following a long history of courts holding that aliens could not establish residence in the United States for purposes of venue, Congress enacted the Federal Courts Jurisdiction and Venue Clarification Act ("Act"), Pub. L. 112-63, 125 Stat. 758 (Dec. 7, 2011), adding one specific subset of aliens to Section 1391(c)(1): those who had obtained Legal Permanent Resident ("LPR") status. (*Id.* at 12-13 (citing 125 Stat. at 763)). Defendant argues that the legislative history associated with the Act shows that Congress did not intend to add all aliens: "An alien can obtain a 'lawful domicile' in the United States only if he or she has the ability under the immigration laws to form the intent to remain in this country indefinitely." (*Id.* at 14 (citing H.R. Rep. 112-10, at 33 n.16 (Feb. 11, 2011); *see also id.* ("forclos[ing] the possibility that an undocumented alien would be regarded as a domiciliary of the United States for venue purposes")).

Ultimately, the Court finds Plaintiff's arguments regarding the interpretation of 28 U.S.C. § 1391(c) unavailing. Plaintiff's reading of the statute is overly broad, as it ignores both legislative intent and the longstanding history of excluding aliens from establishing venue through domicile. Moreover, Plaintiff's suggestion that all uses of the term "resides" in the United States Code must be consistent fails to appreciate the specific meaning of the term "resides" in venue

17

statutes.  It also overlooks the fact that legislative history can trump the presumption of consistent usage, as it does here. *See generally, General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581 (2004).

Moreover, Plaintiff cannot establish that he obtained lawful permanent residence in the United States through valid TPS for the purposes of venue.  Under 8 U.S.C. § 1254a(f)(1), an alien "shall not be considered to be permanently residing in the United States under color of law." *Id.*  As a result, this Court finds that Plaintiff does not reside in the Commonwealth of Virginia for the purposes of venue.

In addition to residency, venue under the FTCA can also be proper where the act or omission took place.  28 U.S.C. § 1402(b).  Plaintiff's claims involve events that took place in Texas and Virginia.  Defendant acknowledges that venue is proper in the Eastern District of Virginia for Plaintiff's false imprisonment claim that took place in Virginia.  (Def. Mem. in Supp. at 11.)  The Court agrees.  However, the Court finds that Plaintiff's other claims, arising out of events that took place in June and July 2013 in Texas, have been improperly filed here.

Section 1406(a) governs claims filed in an improper venue.  28 U.S.C. § 1406(a).  As noted above, it provides that the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which

18

it could have been brought." *Id.* To determine where a case
"could have been brought," the "movant must establish that both
venue and jurisdiction with respect to each defendant is proper
in the transferee district." *Adhikari v. KBR, Inc.*, No. 1:15-CV-
1248 (JCC/TCB), 2016 WL 4162012, at *10 (E.D. Va. Aug. 4, 2016)
(citing *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d. 627, 630
(E.D. Va. 2003)). In the Fourth Circuit, the Court should
conduct the same analysis under Section 1406(a) as it would
under Section 1404(a) for the "interest of justice" standard.
*Nichols v. G.D. Serle & Co.*, 991 F.2d 1195, 1201 n.5 (4th Cir.
1993). This includes such considerations as: the pendency of a
related action, the court's familiarity with the applicable law,
docket conditions, access to premises that might have to be
viewed, the possibility of an unfair trial, the ability to join
other parties, and the possibility of harassment. *Pragmatus AV,
LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 996 (E.D. Va. 2011).

This Court finds that Plaintiff's Texas claims could
have been brought in the Southern District of Texas, as that is
where the majority of alleged events took place.[2] *See* 28 U.S.C.

---

[2] The CBP border patrol facility at which Plaintiff was held are in the
Southern District of Texas [Dkt. 10-3 ¶ 3], while ICE's South Texas Detention
Center is located in the Western District of Texas [Dkt 10-4 ¶ 3]. The
Government waived any objection to venue being proper in the Southern
District of Texas at the hearing held on November 16, 2016. Because
Plaintiff's false imprisonment claim relating to his detention in the South
Texas Detention Center arises from the same nucleus of operative fact as the
negligence, IIED, and assault and battery claims, the Southern District of
Texas could adjudicate this additional claim under the doctrine of pendant
venue. *See, e.g, Covey Run, LLC v. Washington Capital, LLC*, 2016 WL 3747529,
at *9 n.9 (D.D.C. July 11, 2016).

§ 1402(b).  Moreover, a transfer to the Southern District of Texas would be in the interest of justice.

Plaintiff argues that this Court should not grant Defendant's motion to transfer because Plaintiff selected the Eastern District of Virginia as his forum of choice.  Plaintiff also argues that it will be financially difficult to prosecute the case in Texas, as several witnesses live in or near the Washington, D.C. metro area.  Rather than severing and transferring his Texas claims, Plaintiff urges this Court to exercise pendent venue over those claims.

Defendant argues that Plaintiff's Texas claims should be transferred because Texas law will apply, the majority of evidence and witnesses are located in Texas, and localized controversies should be resolved at home.  In addition, Defendant claims that the government "would have to remove a significant number of CBP officers from their regular duties on the border," which would further burden an entity already facing resource shortages.  (Def. Rep. at 8.)  Furthermore, Defendant asserts that these officers should not have to "travel around the country every time a lawsuit is filed by any of the thousands of transitory individuals they come into contact with each year." (*Id.*)  Finally, Defendant argues that some of the evidence in this case could not be transferred electronically

and that the border patrol station in particular could only be visited by the district court in Texas. (*Id.*)

While substantial deference is typically given to a plaintiff's choice of forum, *Pragmatus*, 769 F. Supp. 2d at 995 (citing *Board of Trustees v. Baylor Heating and Air Conditioning, Inc.*, 702 F.Supp. 1253, 1256 (E.D. Va. 1988)), the majority of Plaintiff's claims arose out of events that took place in Texas. It would not be in the interest of justice to adjudicate those claims here. Moreover, after considering Plaintiff's request to exercise pendent venue over those claims, the Court declines to do so. *See Lengacher v. Reno*, 75 F. Supp. 2d 515, 518 (E.D. Va. 1999) (internal citation omitted). The doctrine of pendent venue permits a court to "hear a claim for which venue is improper, when it arises out of a nucleus of operative fact common to a proper one." *Jones v. Custom Truck & Equip., LLC*, 2011 WL 250997, at *5 (E.D. Va. Jan. 25, 2011) (internal citation omitted). Plaintiff's Texas claims and his Virginia claim do not arise out of the same set of facts, as they involve different events in different states, separated by about ten months, and alleged to have been committed by different federal actors.

Because this Court has "unfettered discretion" to sever any claim against a party, *17th Street Assocs.*, 373 F. Supp. 2d at 598 n.9, it severs and transfers Plaintiff's Texas

21

claims to the Southern District of Texas.  Defendant's motion to transfer Plaintiff's Texas claims under 28 U.S.C. § 1404(a) is now moot and, thus, the Court declines to address its merits. Plaintiff's remaining false imprisonment claim, related to events that took place in Virginia in May and June 2014, will remain in the Eastern District of Virginia.

C.   12(b)(6) Motion to Dismiss

Defendant withdrew its Rule 12(b)(6) motion directed at Plaintiff's remaining false imprisonment claim arising from events that took place in Virginia.  Accordingly, the Court denies Defendant's 12(b)(6) motion as moot.

**IV.   Conclusion**

The Court finds that Section 1252(g) does not divest it of jurisdiction to hear Plaintiff's claims.  For that reason, the Court denies Defendant's motion to dismiss for lack of subject matter jurisdiction.  The Court also concludes that Plaintiff's Texas claims were improperly filed in the Eastern District of Virginia.  Thus, the Court grants Defendant's motion to sever and transfer those claims to the Southern District of Texas.  However, the Court continues Plaintiff's cause of action regarding his remaining false imprisonment claim, related to events that took place in Virginia in May and June 2014, in the Eastern District of Virginia.  Finally, the Court denies as moot

Defendant's 12(b)(6) motion, as it was withdrawn with respect to

Plaintiff's remaining false imprisonment claim.

        An appropriate Order will issue.


                                                       /s/

November 22, 2016                    James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE